WASHINGTON BELT and Others, Appellants, v. AMERICAN CENTRAL INSURANCE COMPANY, Respondent.

*Fire insurance policy — a present insurance effected by a binding slip and an indorsement on the policy — subsequent changes in the body of the policy a mere formal authentication.*

In an action brought to restore an insurance policy to its original terms, in which it was claimed by the plaintiffs that a one hundred per cent co-insurance clause had been substituted for an eighty per cent co-insurance clause, it appeared that at the time the insurance was effected one of the plaintiffs' brokers called upon the defendant's agents and wrote an indorsement on the back of the policy in the latter's presence and handed to them a "binding slip," insuring the plaintiffs "as per policies left with companies for a reduction in rate, binding this 26th day of August at noon," following which were the numbers and amounts of the policies and the names of the companies, opposite to which names in a column headed with the word "accepted," one of the defendant's agents who received the policies, in order to have the changes, which had been thus agreed upon, stated upon the face of the instruments, signed the initials of his firm and returned the binding slip to the plaintiffs' agent.

The memorandum indorsed upon the policy read as follows: "63 c. Full Co. In. Cl., Building 65; stock 10; Co. full clause."

The insured property was destroyed by fire before the actual entry of the change of rate was made upon the face of the policy, which entry when made read as follows: "Aug. 22, '92. Rate reduced to 63c, for improvements under slip No. 1483, return premium, $18.78 therefor," and the new co-insurance clause was also physically attached to the policy subsequent to the date of the fire.

The evidence showed that the plaintiffs' agent had authority to consent to the change in the policy, and that the plaintiffs had actual notice thereof.

*Held,* that as the signing and delivery of the binding slip and the indorsement on the back of the policy took place simultaneously on the twenty-sixth day of August and before the fire, a present contract of insurance on the new terms was entered into on that day, the binding slip being not a mere agreement to insure, but a present insurance to the amount specified therein;

That the subsequent physical changes which were made in the face of the policy constituted a mere authentication in formal shape of the contract as it had been established between the parties before the fire.

APPEAL by the plaintiffs, Washington Belt and others, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 3d day of November, 1897, upon the decision of the court rendered after a trial at the New York Special Term dismissing the complaint upon the merits.

*William H. Hamilton*, for the appellants.

*Michael H. Cardozo*, for the respondent.

Judgment affirmed, with costs, on opinion of BEEKMAN, J., in the court below.

The following is the opinion of BEEKMAN, J. :

BEEKMAN, J. :

Upon the previous trial of this action the complaint was dismissed at the close of plaintiffs' case, on the ground that there had been a complete accord and satisfaction between the parties by the receipt by the plaintiffs of the amount paid them by the defendant on the settlement of the loss under the policy. The judgment which followed this decision was affirmed by the General Term of this court, though on different grounds. (74 Hun, 448.) On appeal to the Court of Appeals (148 N. Y. 624) the judgment and order of affirmance were reversed on the ground, which is gathered from the opinion of the court, that "the trial judge treated the settlement of the loss as if it were a full accord and satisfaction, and would not allow the plaintiffs to prove the facts constituting their cause of action." As that court also held that no accord and satisfaction had been established, a new trial was ordered in order that the plaintiffs might have an opportunity of presenting their proofs in support of the charge, which is the gravamen of their suit, that the policy had been materially changed by the defendant company, without their knowledge or assent, after the property insured had been destroyed by fire, and the liability of the defendant on the policy had become fixed — a fact which they did not discover until after the settlement of the loss. The change so claimed to have been made was the substitution of a hundred per cent co-insurance clause for the eighty per cent co-insurance clause which was appended to the policy when it was originally issued ; and as under the latter clause the plaintiffs would have been entitled to receive $823.72 more than they did, this action is brought to restore the policy to its original terms, to set aside the settlement and for the recovery of the above amount. The plaintiffs were engaged in the wool business at Nos. 120 and 122 Wooster street, and in July, 1892, obtained from various companies a line of insurance upon their goods which were stored in the premises above

mentioned.    Among the policies was the one in suit for $5,000,
which bears date July 18, 1892, and was issued by the defendant,
a foreign corporation, through Ackerman, Deyo & Hilliard, its
agents in this city.    The rate of premium was $1.05 per $100,
but there was an understanding that the rate would be reduced as
soon as certain changes in the building which were contemplated
had been made.    The policy had attached to it an eighty per cent
co-insurance clause, and was in accordance with the prescribed form
known as the New York standard.    The insurance was taken out by
the plaintiffs through their brokers, Brown & Skinner; the policy
was delivered to the latter and was retained by them in view of the
expectation that, within a short time, they would need it in order to
obtain the reduction in rate which they were to apply for on behalf
of the plaintiffs when the alterations in the buildings had been
completed.

It appears that the New York Board of Fire Underwriters is in
the habit of supplying information to insurers with respect to pre-
mium rates, under what arrangement it is unnecessary to consider.
On August 22, 1892, a printed slip, described by the number 1483,
was furnished by it to the defendant's agents, containing among
others, the following item : " 120-122 Wooster street. Communi-
cations with 116-118, rear; bricked up; out 35; alter to 65."    On
August 26, 1892, one Benjamin W. Skinner, a clerk of Brown
& Skinner, plaintiffs' brokers, called at the office of Ackerman, Deyo
& Hilliard, defendant's agents, and in an interview with Mr. Deyo,
a member of the firm, asked for the desired reduction in the rate,
which was assented to, and the amount was then and there agreed
upon.    Skinner wrote an indorsement on the back of the policy in
Mr. Deyo's presence which embodied the changes assented to, and
handed to him a paper described as a " binding slip," which had
been previously prepared in Brown & Skinner's office.    This slip,
which was dated the day previous, contained a declaration that the
undersigned insurance companies did thereby insure Belt, Butler &
Co. for the amount set opposite their respective names, subject to
the conditions of standard fire insurance policy of the State of New
York on stock of wool contained in 120 and 122 Wooster street, New
York city, " as per policies left with companies for a reduction in rate,
binding this 26th day of August at noon."    Then followed in par-

allel columns the numbers of the policies, the names of the companies in type writing and the amounts of the policies. Opposite the names of the four companies represented by Ackerman, Deyo & Hilliard, which included that of the defendant, and under a column headed "Accepted," Mr. Deyo placed the initials of his firm, A. D. & H. He then returned the slip to Skinner, who left the policies with the indorsement which he had made upon the one in suit with the defendant's agents, in order to have the changes which had been thus agreed upon stated upon the face of the instruments. The memorandum so indorsed by Skinner upon the policy was in abbreviated form and reads as follows: " 63c. full co. — in. cl; building 65 ; stock 10 ; co. full clause." He denies that he wrote it, or ever saw it until the first trial of this case. I am, however, satisfied that it is in his handwriting, and prefer to accept Mr. Deyo's version of what took place at their interview rather than his. The import of this memorandum was that the net rate assented to was sixty-three cents. The method of arriving at this was explained by Mr. Deyo. The building rate was sixty-five cents. Adding ten cents for stock and deducting five cents for the sole occupancy gives a rate of seventy cents, from which is to be deducted ten per cent of itself on account of the full co-insurance clause, leaving the net rate of sixty-three cents which was agreed upon. It will thus be observed that the nature of the co-insurance clause determined the rate of premium, and that it was, therefore, natural to expect in such a memorandum relating to a reduction in the premium just such a reference as was made to the co-insurance clause.

I find then, that on the 26th day of August, 1892, there was a valid agreement between the plaintiffs, through their brokers, and the defendant company, through their agents, reducing the rate of premium to sixty-three cents, and as an element of the act and as a part of the agreement, changing the co-insurance clause as above stated. On the morning of August twenty-seventh, the day following, the property insured was substantially destroyed by fire. This took place before the actual entry of the change of rate upon the face of the policy, which entry reads as follows: "Aug. 22 92. Rate reduced to 63 c. for improvements under slip No. 1483, return premium $18.78 therefor." . Slip No. 1483 thus referred to was the circular of the New York Board of Fire Underwriters advising the change of rate, and

which bore date on August 22, 1892.  It was, therefore, proper that the indorsement giving effect to the change should bear similar date. At all events, I think it is obvious upon the evidence that there was no intention to mislead or to practice any deceit upon the plaintiffs in the adoption of this date.  The new co-insurance clause was also physically attached to the policy subsequent to the date of the fire.  It appears from the evidence that the business of the defendant's agents is so extensive that some days usually elapse before such a transaction as this can be physically noted upon the policy and passed through their books.  In the present case the policy with the changes above mentioned expressed upon its face was not returned to the plaintiffs' brokers until some ten days after the fire.  The adjustment of the loss was a matter of investigation and determination by adjusters severally employed by the plaintiffs and defendant.  In the settlement of the amount to be paid, the policy in question was treated as providing for full co-insurance, and it was upon this basis that the defendant paid to the plaintiffs, and the latter accepted, the sum of $3,294.88, which was receipted for by the plaintiffs, as the receipt itself reads, " in full settlement, compromise and discharge of all claims and demands " for the loss which had been sustained.  So far as the evidence shows, there was no dispute between the company and the plaintiffs with respect to the change in the policy either before or at the time of the payment and delivery of this receipt.  The contention of the plaintiffs is that they had no personal knowledge of the change in the co-insurance clause until after the payment of the loss, and that they had never authorized their brokers, Brown & Skinner, to sanction any such change.  Mr. James R. Skinner, a member of the firm, testifies that a change to the full co-insurance clause had been the subject of conversation between himself and Mr. Butler, one of the plaintiffs, and that according to his understanding of the matter, it had been authorized.  Mr. Butler denies that any such authority was given.

It may well be claimed that, under the evidence with respect to the relations between the plaintiffs and their brokers, the latter were invested with all the indicia of authority to consent to the change which was made, and that the defendant's agents were, therefore, justified in dealing with them on the assumption of the existence of such authority.  (*Standard Oil Co.* v. *The Triumph Ins. Co.*, 3 Hun, 591;

64 N. Y. 85; *Karelsen* v. *Sun Fire Office of London*, 122 id. 54.) But apart from that, it is plain that the plaintiffs had actual notice of the change which had taken place before the adjustment of loss had been agreed upon, and before the payment which they accepted from the defendant and receipted for in the terms above quoted. Mr. Harris, the adjuster for defendant, testifies that before the loss was adjusted he went over the list of insurance with Mr. Butler, and called his attention to those policies which had one hundred per cent co-insurance clauses and those which contained the eighty per cent clause, and that the policy in question issued by the defendant was among the former. It also appears that the proofs of loss, signed by Mr. Butler himself, refer to and have attached to them a statement of the 100 and 80 per cent policies, and that the defendant's policy is classified among the former. With this information before him, he should have objected then and there if he had any objection to urge such as he now makes. His silence is strongly confirmatory of the evidence of James R. Skinner that he had actual authority in the first instance to make the change. At any rate silence under such circumstances was equivalent to a ratification of the act, and he cannot be heard now to allege the contrary. Where, then, was the fraud and deceit on which the plaintiffs rest their cause of action? The insurance upon which the loss was settled was in all respects that which had been agreed upon between them or their authorized agents and the defendant.

There seems to be nothing left except the contention that the change was not actually made either in fact or in law until after the loss had occurred. But finding as I do that the signing and delivery of the binding slip and the indorsement on the back of the policy made by Skinner, took place simultaneously on the twenty-sixth day of August, the day before the fire, their cause of action is utterly without support. The binding slip and the agreement with respect to the rate of premium and the associated one hundred per cent co-insurance clause, which entered into the fixing of the rate, constituted a present contract of insurance on the new terms. (*Lipman* v. *Niagara Fire Ins. Co.*, 121 N. Y. 454.) At page 457 of the report of that case, Andrews, Ch. J., says: "The binding slip signed by the defendant was not a mere agreement to insure, but was a present insurance to the amount speci-

fied therein. The instrument is informal." Again (at p. 458) he says : " We think there can be no doubt that the true construction of the binding slip only obligated the defendant according to the terms of the policy in ordinary use by the company. There is no other reasonable interpretation of the transaction. The binding slip was a short method of issuing a temporary policy, for the convenience of all parties, to continue until the execution of the formal one." In the case at bar the subsequent physical changes which were made on the face of the policy constituted a mere authentication in formal shape of the contract as it had been established between the parties the day before the fire. The plaintiffs contend that, by the terms of the policy as originally issued, the agents of the defendant had no power to alter it in any way except by the formal indorsements which were subsequently made upon the face of the policy. It is sufficient to say that the provision in question was inserted for the benefit of the defendant only, that it has waived it, and has adopted the act of its agents as its own. It follows from what has been said, that there must be judgment for the defendant, dismissing the complaint on the merits with costs.